# WHEELING.

## STATE *v.* HOWES.

Submitted June 12, 1885.—Decided June 27, 1885.

1. An indictment may be fatally defective as an indictment for robbery yet good for an assault. (p. 112.)

2. If such indictment attempts to charge the offence of robbery and is bad for that offence and charges an assault, it is good for the lesser offence, and a motion to quash such indictment is properly overruled. (p. 114.)

3. Mere surplusage in an indictment will not vitiate it; and therefore where an indictment alleges facts, which constitute a misdemeanor, it will be good for that offence, although it states other facts, which go to constitute a felony, but falls short of stating sufficient facts to constitute that crime. (p.. 114)

4. Verdicts in neither civil nor criminal cases will be set aside for objections to jurors on grounds, which existed before they were sworn, unless it appears that by reason of the existence of such grounds the party objecting has suffered wrong or injustice ; and in no case would a verdict be set aside for a matter, which was a principal ground of challenge to a juror, unless it was shown to the court, that such juror had prejudged the case. (p. 115.)

5. A verdict in a misdemeanor case will not be set aside, because the sheriff of the county had, after the jury was sworn, made a bet that the jury would find the defendant guilty. (p. 116.)

The facts of the case sufficiently appear in the opinion of the Court.

*T. A. Bradford* and *S. Dayton* for plaintiff in error.

*Alfred Caldwell,* Attorney General, for the State.

JOHNSON, PRESIDENT :

At the March term, 1882, of the circuit court of Barbour county the defendant was indicted for robbery; but the indictment failed to charge, that the property was taken from the person forcibly and against the will of the party from whom taken. The indictment for robbery is here of course admitted by the State to be bad. A motion to quash the indictment was overruled; and the defendant pleaded not guilty. The jury found the defendant not guilty of the felony charged, but found him "guilty of an assault, upon John Prim as charged in the indictment."

The defendant moved the court to set aside the verdict and grant a new trial. This motion was based on several grounds. The court overruled the motion and entered judgment, that defendant pay a fine of $100.00 to the State and be imprisoned in the jail of Barbour county for twelve months.

After the verdict was rendered, the defendant filed his affidavit, in which he states : " That James E. Heatherly, who had the said jury in charge, actually made a bet with Dr. G. B. Harvey, and the stakes were put up in the hands of J. M.

Woodford as stakeholder, that the said jury would convict affiant, when they returned their verdict into court." He further in said affidavit stated, that Thomas Moran, one of the jurors who tried affiant, had made up and expressed his opinion about the case before he was sworn, and that knowledge of the same did not come to affiant until after the verdict was rendered; that another juror, Silas Upton, had admitted, that he was not qualified to try the case. The said Heatherly, sheriff, was sworn on behalf of the State, and admitted he had made a bet on the verdict of the jury, but that he did not have charge of said jury nor speak to them nor was in their presence, after he had made said bet.

The court overruled the motion for a new trial based on said affidavit. The defendant then filed a second affidavit, and on the grounds therein set forth moved for a new trial, which motion was overruled. This second affidavit seems to contain nothing pertinent to the case and is ignored in the brief for the defendant, the plaintiff in error. In said affidavit it is stated, that since the trial, affiant had discovered that John O'Neal, one of the jurors, had before he was sworn stated he was opposed to *Red Men,* and that if he were ever on a jury to try one, he would send him to the penitentiary or hang him, and that all through the trial affiant was accused of being a *Red Man.*

To the judgment on the verdict the defendant obtained a writ of error.

It is here insisted, that as the indictment was bad as an indictment for robbery, it was also bad for an assault and should have been quashed. In the case of *Hardy and Curry* v. *Commonwealth,* 17 Grat. 592, the indictment was for robbery. It charged that the prisoner " did make an assault" upon one G., and one gold watch, &c., from the person and against the will of G., &c., " feloniously and violently did steal," &c. The jury acquitted the prisoners of the felony charged but found them guilty of " assault and battery." On motion in arrest of judgment the finding was held valid. This was held admissible under ch. 208, sec. 27 of the Code. The same provision is in sec. 18 of ch. 159 of our Code, and is as follows : " If a person indicted of felony be by a jury acquitted of part and convicted of part of the offence charged, he shall be sen-

tenced for such part as he is convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor." To the same effect is *Canada's Case,* 22 Grat. 905. If the offence, of which the prisoner was found guilty by the jury, were included in the greater offence, for which the party was indicted, he was properly convicted on that indictment of the lesser offence.

In both the above cited cases the indictment for the greater offence was good; here it is clearly bad for the higher crime. Can a party be convicted on a bad indictment for robbery of an assault, which is substantially charged in such indictment? This question we believe has never been decided in Virginia or this State.

In *Commonwealth* v. *Blaney,* 133 Mass. 571, the indictment charged that the defendant "with force and arms with malicious intent one A. then and there to maim and disfigure in and upon the said A. feloniously did make an assault," and that he, "a portion of the nose of the said A. then and there feloniously and maliciously did bite off." It was held, that this was a good indictment for assault and battery, and that a motion to quash the indictment, on the ground that it does not properly set forth the offence described in the statute, and a motion that the defendant be allowed to plead specially to the charge of assault and battery were properly overruled. Devens, Judge, said. "Assuming that the aggravation was not well charged, yet the indictment contained every element of a formal and substantial charge of assault and battery. It was not therefore defective by reason of failing to charge the defendant in due form with any offence. It could not have been quashed on motion nor adjudged bad on demurrer." It is further said, "for similar reasons the defendant was not entitled as he desired to plead specially to the charge of assault and battery. He could, when judgment was to be rendered and sentence imposed, object to any sentence except for that crime and was entitled there to be heard on that subject.

In *Madame Restell's Case,* 1 Com. 379, it was held that mere surplusage in an indictment will not vitiate it, and therefore, where an indictment alleges facts, which constitute a misdemeanor, it will be good for that offence, although it states other facts, which go to constitute a felony, provided

all the facts alleged fall short of the charge of felony, in consequence of some other fact essential to that charge, *e. g.*, the intent of the party accused, not being averred. By statute in New York it was a misdemeanor to administer drugs, &c. to a pregnant female *with intent to produce a miscarriage,* and by another statute it was manslaughter to use the same means *with intent to destroy the child,* in case the death of such child be thereby produced. An indictment charged all the facts necessary to constitute the crime of manslaughter except the intent, with which the acts were done, and in its conclusion it characterized the crime as manslaughter; but the only intent charged was an *intent to produce a miscarriage.* It was held that the indictment was fatally defective for the felony but good for the misdemeanor, and that the accused was properly convicted of the latter offence.

The indictment here, while it falls short of charging the crime of robbery, clearly charges an assault, for which the defendant was convicted, and the defendant certainly has no right to complain, because he was not legally charged with the crime of robbery as well as for the assault, which would necessarily precede that crime. If the indictment properly charges an assault, the surplusage contained in the indictment by reason of an unsuccessful attempt to charge the higher crime will not vitiate it for the lesser one, which is well charged.

As it might be under sec. 14 of ch. 152 of the Code, a question not here decided, that the defendant could plead an acquittal of the higher offence under a fatally defective indictment for such offence in bar of a good indictment for the same offence, the attorney for the state should be exceedingly careful not to go to trial on such defective indictments, unless he thinks the accused is not guilty of the felony.

The court properly refused to quash the indictment, as it was good as an indictment for an assault. And the indictment being a good indictment for the misdemeanor, of which the defendant was found guilty, the court properly refused to arrest judgment.

It is assigned as error, that the court refused to set aside the verdict, on the ground that the jurors, Moran and Upton, had formed and expressed an opinion upon the guilt or

innocence of the accused, before they were sworn on the jury, and that as to the juror Moran the knowledge thereof did not come to defendant until after the trial. Of course no ground whatever is alleged to show, that the verdict should be set aside, because Upton was not a qualified juror, as the affidavit does not state, that the defendant had no knowledge of his bias before the trial, although it states that Upton after the trial had stated, that "he was not qualified to try said cause," but for what reason is not stated. He could not be heard to impeach his own verdict. It is the settled law in this State in both civil and criminal trials, that the verdict of a jury will not be set aside for objections to jurors on grounds, which existed, before they were sworn, unless it appears, that by reason of the existence of such grounds the party objecting has suffered wrong or injustice; and the ignorance of the party complaining of such grounds in such case until after verdict is immaterial. (*Flesher* v. *Hale*, 22 W. Va. 44.) This disposes of the objections to both of said jurors; for in neither case is it shown, what the character of the objection to the jurors was, whether either of them had expressed merely a casual opinion, or whether they had prejudged the case.

Even in a murder case a new trial will not be granted for matter that was a principal cause of challenge to a juror, which existed before he was elected and sworn, but which was unknown to the prisoner until after the verdict, and which could not have been discovered by the exercise of ordinary diligence, unless it appears, that the prisoner suffered injustice from the fact that such juror served upon the case; and that could only be shown in such case by evidence sufficient to show, that such juror had prejudged the case. *Greer's Case*, 22 W. Va. 800. Certainly no less stringent rule would be adopted in a misdemeanor or civil case. There is no such evidence in this case.

It is also assigned as error, that the court refused to set aside the verdict on the ground that the sheriff, who had charge of the jury, made a bet, while the jury were considering the case, that the verdict would be against the defendant. Speaking for myself I have no hesitation in saying, that, if this were a felony case, and the sheriff, who had charge

of the jury, had made a bet with any one, while he had the jury so in his charge, that the jury would find the prisoner guilty, this fact would raise a presumption, that the prisoner was prejudiced thereby, and the burden would be thrown upon the State of showing, that the prisoner could not have been prejudiced by such conduct of the officer having the jury in charge. I think this would be the logical result of the principles this Court has already laid down in *Cartright's Case*, 20 W. Va. 32, and *Greer's Case*, 22 W. Va. 800. But this is not a felony but a misdemeanor case. The indictment, we have seen, did not charge felony, but was good as an indictment for a misdemeanor. The jury was therefore not properly in the charge of the sheriff during the trial, and under these circumstances the betting of the sheriff on the result of the trial would be no more than the betting of any one else on the verdict. At the time the bet was made, the jury had been already selected and sworn, and therefore the sheriff after the bet had nothing to do with the selection. What effect such betting would have had on the verdict, if made before the jury were sworn, and if the sheriff had anything to do with the selection of the jury, does not arise in this case.

There was nothing in the second motion for a new trial, as there is no evidence in the case that defendant was a "Red Man."

There is no error in the judgment of the circuit court, and it is therefore affirmed.

AFFIRMED.