**Shaquita GILBERT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0606–CR–448.[1]**

Court of Appeals of Indiana.

Oct. 16, 2007.

1. This case was eligible for transmission to the Indiana Court of Appeals on December 15, 2006. By oversight, it was not transmitted from the Clerk's Office to this court until September 21, 2007.

Michael C. Borschel, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Shaquita Gilbert appeals her conviction for Aggravated Battery,[2] a class B felony. Gilbert argues that there is insufficient evidence establishing that she caused the victim's severe injuries. Finding that Gilbert inflicted the injuries by inciting her pit bull to attack

the victim, we affirm the judgment of the trial court.

### FACTS

On September 4, 2005, Veronica McAtee arrived at the Indianapolis home of her daughter's great-grandmother, Ella Mae Williams, to drop off asthma medication for her daughter. Williams was also great-grandmother to Gilbert, who was living with Williams after McAtee had kicked Gilbert out of her home. Gilbert and McAtee had a hostile relationship.

Gilbert opened the door after McAtee knocked. McAtee said that she was not "in the mood" for Gilbert, explaining that she was merely there to drop off her daughter's medication. Tr. p. 28. Gilbert slammed the door in McAtee's face, and McAtee then knocked again and yelled to inform Williams that she would leave the medicine in Williams's mailbox.

As McAtee walked away from the house, she heard a noise behind her. She turned around and observed Gilbert in a "confrontational stance." *Id.* at 30. Gilbert began swinging her fists at McAtee and yelled, "Get'er. Get'er. Sic. Sic. Get'er. Get'er." *Id.* Within seconds, China, the pit bull that lived with Williams and Gilbert, lunged at McAtee and grabbed her by the arm, causing her to suffer extreme pain.

Gilbert returned briefly to the house and emerged carrying a can of mace, which Gilbert then emptied into McAtee's face. After she used all of the mace, Gilbert repeatedly struck McAtee's face with the empty can. Gilbert also kicked and punched McAtee, making no attempt to remove or otherwise calm the dog, whose jaws were still clamped onto McAtee's arm. Gilbert yelled, "Kill that bitch. Kill that bitch.... [T]hat's what you get,

**2.** Ind.Code § 35–42–2–1.5.

bitch. That's what you get, bitch. You should've died, bitch." *Id.* at 35. Williams, an eighty-six-year-old woman, ultimately came to McAtee's aid, pulling China off of McAtee.

McAtee suffered swollen eyes from the mace and a black eye from Gilbert's punches. She also sustained bite marks on both arms and on her feet. Her right hand and arm suffered nerve damage to an extent that she now has no feeling in three of her fingers.

On September 13, 2005, the State charged Gilbert with class C felony criminal recklessness. On March 31, 2006, the State amended the information, adding charges of class B felony aggravated battery and class C felony battery. Following an April 20, 2006, jury trial, the jury found Gilbert guilty of criminal recklessness and aggravated battery and not guilty of battery. Following a May 3, 2006, sentencing hearing, the trial court found that the criminal recklessness conviction merged into the aggravated battery conviction, entering a judgment of conviction and imposing a sentence only on the latter charge. The trial court imposed a ten-year sentence with two years suspended to probation. Gilbert now appeals.

## DISCUSSION AND DECISION

█ Gilbert argues that there is insufficient evidence establishing that she caused injuries to McAtee that rise to the level required for an aggravated battery conviction.[3] Specifically, Gilbert argues that the dog caused the most serious injuries to

McAtee and that Gilbert's own actions caused McAtee to suffer only bruising and swollen eyes.

█ When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses, considering instead only the probative evidence and reasonable inferences that may be drawn therefrom that support the verdict. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). If the evidence and inferences could have allowed a reasonable factfinder to find the defendant guilty beyond a reasonable doubt, we must affirm. *Id.*

To convict Gilbert of class B felony aggravated battery, the State was required to prove beyond a reasonable doubt that she knowingly or intentionally inflicted injury on McAtee, causing protracted loss or impairment of the function of McAtee's right hand. I.C. § 35–42–2–1.5(2).[4] Gilbert concedes that the injuries to McAtee's right hand rise to the level required by the aggravated battery statute.

Gilbert argues that inasmuch as it was the dog that caused the injuries to McAtee's right hand, the evidence does not support her conviction. The record reveals that as McAtee was walking away from Williams's house, Gilbert began swinging her fists at McAtee and then ordered the pit bull to "Get'er. Get'er. Sic. Sic. Get'er. Get'er." Tr. p. 30. The dog obeyed the command and attacked McAtee, grabbing her by the arm and refusing to let go. Gilbert's assault of

---

3. Gilbert also challenges the sufficiency of the evidence supporting the jury's guilty verdict on the criminal recklessness charge, but inasmuch as the trial court neither entered a judgment of conviction nor sentenced Gilbert on that count, we will not address this argument.

4. The charging information alleged that Gilbert, "on or about September 4, 2005, knowingly inflicted injury on a person, to-wit: *extreme pain and tissue damage*, on another person Veronica McAtee, that caused protracted loss or impairment of the function of the right hand of Veronica McAtee...." Appellant's App. p. 35.

McAtee continued—she emptied a can of mace in McAtee's face and then beat her with the empty can. Not only did Gilbert make no effort to call the dog off of McAtee or remove the dog physically, she continued to encourage the animal, yelling, "Kill the bitch. Kill the bitch," *id.* at 35, and "[t]hat's right, China. Tear that bitch's head off." *Id.* at 74, 79.

Although dogs are living creatures, they can be weapons—even deadly weapons—when used as such by a human. *See, e.g., State v. Bowers,* 239 Kan. 417, 721 P.2d 268, 274 (1986) (holding that "[i]t may be said a Doberman pinscher is not a deadly weapon per se, but an ordinary object *used* in a deadly manner is a deadly weapon within the meaning" of the defining statute) (emphasis in original); *State v. Hoeldt,* 139 Wash.App. 225, 160 P.3d 55, 57 (2007) (holding that a dog can be a deadly weapon and observing that the majority of jurisdictions that have considered the issue have found that general definitions of "deadly weapons" should be broadly construed to include dogs); *Commw. v. Fettes,* 64 Mass.App.Ct. 917, 835 N.E.2d 639, 640 (2005) (holding that a dog can be a dangerous weapon); *State v. Cook,* 164 N.C.App. 139, 594 S.E.2d 819, 822 (2004) (holding that a dog "can be considered a deadly weapon not only if it was deadly by its nature, but also if it was used by defendant in a deadly manner"), *summarily aff'd,* 359 N.C. 185, 606 S.E.2d 118 (2004). If a defendant shoots the victim with a gun, we would certainly not find insufficient evidence merely because it was the gun, rather than the defendant, that injured or killed the victim. Similarly, if a defendant incites and encourages a dog to attack the victim, it is logical and just to hold the defendant, who knowingly or intentionally pulled the metaphorical trigger, responsible for the injuries caused by the weapon she wielded.

Here, based on the evidence and inferences in the record, the jury found that the dog did not act of its own accord and was instead used by Gilbert as a weapon to attack McAtee. We cannot say that such a conclusion was unreasonable. Gilbert's emphasis on other evidence questioning the timeline of events merely amounts to a request that we reweigh the evidence and judge the credibility of witnesses—a practice in which we do not engage when considering the sufficiency of the evidence supporting a conviction. Consequently, we find the evidence sufficient to support Gilbert's conviction.

The judgment of the trial court is affirmed.

BAILEY, J., and VAIDIK, J., concur.